IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02454-MJW

EUGENE M. SOTO,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

Defendant.

**ORDER AFFIRMING ALJ'S DECISION DENYING SOCIAL SECURITY BENEFITS**

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

Upon consent of the parties and pursuant to the Order of Reference dated March 12, 2015 (Docket No. 22), this civil action was referred to the Magistrate Judge "for all purposes" pursuant to the Pilot Program to Implement the Direct Assignment of Civil Cases to Full Time Magistrate Judges and Title 28 U.S.C. § 636(c).

In this case, plaintiff, Eugene M. Soto, challenges the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income benefits ("SSI") and disability insurance benefits ("DIB") pursuant to Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3). Plaintiff had previously applied for DIB on October 13, 2009 (Administrative Record "AR" 170-73), alleging an onset date of October 30, 2007, but he was denied at the initial application stage on January 27, 2010 (AR 66, 185). It appears he did not seek review of that decision, but he later applied for SSI and DIB on April 14, 2011 (AR 65), alleging a disability onset date of March 4, 2011. However, he

subsequently amended his alleged onset date to December 14, 2007. (AR 247). On his application, he alleged disability due to osteoarthritis in both knees, anxiety stress, chronic lower back pain, swelling of legs, and limited walking. (AR 65). After a hearing before Administrative Law Judge ("ALJ") Peggy S. Ball, plaintiff's claim was denied in a written decision dated June 18, 2012 (AR 16-26 - Docket No. 9-2 at 17-27). The Appeals Council denied plaintiff's Request for Review on May 24, 2013 (AR 6), and thus the ALJ's decision is the final decision of the Commissioner.

Plaintiff now appeals that final decision. More specifically, plaintiff raises the following errors the ALJ allegedly committed in rendering her decision: (1) the severe impairments the ALJ found plaintiff suffered was incomplete based on a wrong legal standard and not supported by substantial evidence; (2) the Commissioner failed to apply the correct legal standard in determining that plaintiff's impairments did not meet or medically equal any medical Listing, and her assessment was not based on substantial evidence; (3) the ALJ failed to apply the correct legal standard in determining that the functional capacity evaluation should be afforded no weight, and this determination was not based upon substantial evidence; (4) the ALJ's determination that plaintiff could perform other work in the economy was based on a wrong legal standard and not supported by substantial evidence; and (5) the ALJ failed to consider the entire period of alleged disability.

The court has very carefully reviewed the Complaint (Docket No. 1), defendant's Answer (Docket No. 8), plaintiff's Opening Brief (Docket No. 14), defendant's Response

Brief (Docket No. 17),[1] the entire case file, the AR (Docket No. 9), and the applicable case law, statutes, and regulations. The court now being fully informed makes the following findings, conclusions of law, and Order. The court finds, substantially for the reasons stated in the defendant's very thorough Response Brief (Docket No. 17), that the ALJ's decision denying benefits should be affirmed. The court adopts and incorporates the Statement of the Facts section contained in the defendant's Response Brief.

**STANDARD OF REVIEW**

This court's review of the ALJ's determination is limited to determining whether the ALJ's decision is supported by substantial evidence and whether the Commissioner, through the ALJ, applied the correct legal standards. See Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Id. (quoting Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)). "Evidence is not substantial if it is overwhelmed by other evidence in the record." Grogan v. Barnhart, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In reviewing the record and the arguments of counsel, the court does not reexamine the issues de novo, Sisco v. United States Dep't of Health & Human Servs., 10 F.3d 739, 741 (10th Cir. 1993), nor does it re-weigh the evidence or substitute its judgment for that of the Commissioner, Salazar v. Barnhart, 468 F.3d 615, 621 (10th Cir. 2006). Thus,

---

[1] Although the Joint Case Management Plan, as amended, permitted plaintiff to file a Reply Brief by September 11, 2014 (see Docket No. 16), a Reply Brief was not filed.

4

even when some evidence may have supported contrary findings, the court "may not displace the agency's choice between two fairly conflicting views," even if the court may have "made a different choice had the matter been before it de novo." Oldham v. Astrue, 509 F.3d 1254, 1257-58 (10th Cir. 2007). This court has applied this standard to each of the challenges raised by plaintiff in this appeal.

An individual "shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B). The Commissioner has developed a five-step sequential evaluation process for determining whether a claimant is disabled under the Act. See Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Id. at 750. "The claimant bears the burden of proof through step four of the analysis." Neilson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At the fifth step, the burden shifts to the Commissioner to show that the claimant can perform work that exists in the national economy. Id.

Here, at step one, the ALJ determined that the plaintiff had engaged in some substantial gainful activity since March 4, 2011, the alleged onset date. (AR 21). The ALJ noted that the record shows that the plaintiff received wages of $3,492 for the first quarter of 2011; $1,238 for the third quarter of 2011; $3,512 for the fourth quarter of 2011; and $3,696 for the first quarter of 2012. He also received $532 in unemployment

compensation benefits in the third quarter of 2011. The ALJ further noted that the Regulations stipulate that earnings of more than $1,000 per month are considered demonstrative of substantial gainful activity, so it thus appeared that the plaintiff performed substantial gainful activity for a substantial portion of the period at issue. The ALJ stated, however, that "as the claimant is not found to be disabled, the undersigned will forego any further development of this issue in order to avoid delay of issuance of this decision." (AR 21).

At step two, the ALJ found that since the alleged disability onset date, the plaintiff has had a severe impairment, namely, osteoarthritis of the bilateral knees, and more recently has also had the severe impairments of cervical strain and bulging lumbar discs. (AR 21-22). Furthermore, the ALJ stated that the medical evidence also indicated that plaintiff had varicose veins of the lower extremities, but she found that there was no evidence that this impairment has caused significant functional limitations on a continuing basis and thus that impairment was not severe. (AR 22).

Next, at step three of the sequential evaluation process, the ALJ found that the plaintiff did not have an impairment or combination of impairments that meet or medically equal the severity of one of the impairments contained in the Listings. (AR 22).

At step four, the ALJ must determine a claimant's residual functional capacity ("RFC").

> . . . A claimant's RFC to do work is what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability. The decision maker first determines the type of work, based on physical exertion (strength) requirements, that the claimant has the RFC to

>perform. In this context, work existing in the economy is classified as sedentary, light, medium, heavy, and very heavy. To determine the claimant's "RFC category," the decision maker assesses a claimant's physical abilities and, consequently, takes into account the claimant's exertional limitations (i.e., limitations in meeting the strength requirements of work). . . .
>
>If a conclusion of "not disabled" results, this means that a significant number of jobs exist in the national economy for which the claimant is still exertionally capable of performing. However, . . . [t]he decision maker must then consider all relevant facts to determine whether the claimant's work capability is further diminished in terms of jobs contraindicated by nonexertional limitations.
>
>. . .
>
>Nonexertional limitations may include or stem from sensory impairments; epilepsy; mental impairments, such as the inability to understand, to carry out and remember instructions, and to respond appropriately in a work setting; postural and manipulative disabilities; psychiatric disorders; chronic alcoholism; drug dependence; dizziness; and pain. . . .

Williams, 844 F.2d at 751-52. In deciding that plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy, the ALJ had to determine plaintiff's RFC based on all the relevant medical and other evidence in the case record. RFC determinations are for the ALJ to make "based on the entire case record, including the objective medical findings and the credibility of the claimant's subjective complaints." Poppa v. Astrue, 569 F.3d 1167, 1170-71 (10th Cir. 2009). See 20 C.F.R. §§ 416.946, 404.1546 (providing ALJ is responsible for assessing RFC).

Here, the ALJ found that the plaintiff has the RFC to perform sedentary work as defined in the Regulations, "with lifting and/or carrying up to 50 pounds occasionally and 25 pounds frequently; standing and/or walking up to four hours during an eight-hour

workday; and no more than occasional kneeling, crouching, or crawling." (AR 22). The ALJ then determined that the plaintiff is capable of performing past relevant work as a Telemarketer or as a Paraprofessional which do not require the performance of work-related activities precluded by his RFC. (AR 25).

## ANALYSIS

**Substantial Gainful Activity.** In the Response Brief, defendant asserts that the ALJ reasonably found at step one of the sequential evaluation process that plaintiff was performing substantial gainful activity since his alleged onset of disability in March 2011, which precludes an award of disability benefits. Defendant notes that the plaintiff did not dispute that dispositive finding, and thus defendant asserts that the court should affirm the Commissioner's finding that the plaintiff was not disabled within the meaning of the Act. Plaintiff did not file a Reply Brief as allowed under the Joint Case Management Plan, as amended, and thus did not contest defendant's argument.

The regulations provide that "[i]f [the claimant is] working and the work [he is] doing is substantial gainful activity, we will find that [he is] not disabled regardless of [his] medical condition or [his] age, education, and work experience." 20 C.F.R. § 404.1520(b). See Fowler v. Bowen, 876 F.2d 1451, 1453 (10th Cir. 1989) ("If plaintiff actually engaged in substantial gainful activity, he could not be found disabled, regardless of the severity of his impairments."). Furthermore, generally an individual who reported earnings over $1,000 a month in 2011 and over $1,010 a month in 2012 would be considered to have engaged in substantial gainful activity. 20 C.F.R. § 404.1574. "At step one of the sequential analysis, the claimant has the burden of

showing he is not performing substantial gainful activity." Morris v. Apfel, 198 F.3d 258 (10th Cir. 1999) (citing 20 C.F.R. § 404.1571. Here, plaintiff was working and earning more than the stated amounts for substantial gainful activity from August 2011 through March 2012. Therefore, defendant asserts, and this court agrees, that the ALJ reasonably found at step one that "it appears that [plaintiff] performed substantial gainful activity for a substantial portion of the period at issue.'" (Docket No. 17 at 11). Although the presumption raised by the Regulations is rebuttable, Geist v. Astrue, 2010 WL 3777335, at *3 (D. Colo. Sept. 20, 2010) (citing Franco v. Chater, 1996 WL 559641, at *1 (10th Cir. Oct. 2, 1996)), plaintiff has presented no evidence, nor has he suggested here, that any of these earnings were not directly related to his productivity. Thus, as asserted by defendant, the ALJ could have stopped her evaluation of the plaintiff's claim at that step. See Fowler, 876 F.2d at 1453 n.3 (determination that plaintiff engaged in substantial gainful activity may be made solely on the basis of earnings compared with the standards set forth in the Regulations). The ALJ, however, continued along the sequential evaluation process and alternatively found at step four that plaintiff was not disabled because he retained the ability to perform his past relevant work.

Defendant asserts that plaintiff's failure to designate the step one finding as an issue for review forecloses plaintiff's success in this appeal, regardless of the merits of his arguments relating to step four. See Murrell v. Shalala, 43 F.3d 1388, 1389, 1390 (10th Cir. 1994) (Plaintiff did not challenge the merits of the finding of nondisability at step five. Since the unchallenged step-five finding was a sufficient basis for the denial of benefits, plaintiff's success on appeal is foreclosed, regardless of the merit of his arguments relating to step four). Therefore, defendant asserts that the court should

affirm the Commissioner's determination that plaintiff was not disabled.

The court finds that the Commissioner's final decision could be affirmed based on the finding at step one alone. Nevertheless, for plaintiff's sake, the court will proceed to address plaintiff's arguments on appeal.

**Severe Impairments.** Plaintiff first asserts that the ALJ erred because the severe impairments she found plaintiff suffered was incomplete based on a wrong legal standard and not supported by substantial evidence. More specifically, plaintiff contends that the ALJ failed to include plaintiff's obesity. He notes that his treating doctor diagnosed him with obesity and recommended diet and exercise, to the extent he can exercise. (AR 359). In addition, his body mass index ("BMI") was calculated at 36.0 (AR 340), and he notes that a person with a BMI of 31 or greater is considered obese. Plaintiff asserts that the ALJ failed to consider his obesity in her RFC, so the case should be reversed or remanded with instructions to consider all of his impairments. At the end of this argument, plaintiff further contends that the ALJ also did not consider more supportive evidence in portions of her decision and instead "cherry-picked the findings that tended to support a finding of 'not disabled' instead of independently weighing all of the evidence." (Docket No. 14 at 20).

Defendant, however, responds that plaintiff's argument regarding the failure to include his obesity as a severe impairment is of no consequence and need not be considered by the court. As defendant notes, if a claimant does not have any severe impairments, the claimant is found not disabled at step two. See 20 C.F.R. 404.1520(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step. If we cannot find

that you are disabled or not disabled at a step, we go on to the next step.") However, upon determining that a claimant has at least one severe impairment, the ALJ must continue the analysis under the sequential evaluation process. Id. Defendant notes that here, the ALJ found that plaintiff had several severe impairments and continued to the next steps of the sequential evaluation process, evaluating all of plaintiff's impairments, both severe and non-severe, in assessing his limitations. Thus, defendant asserts, and this court agrees, that any alleged error at step two was harmless. See Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008) (any error at step two was harmless where the ALJ determined that the claimant could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence); Rodriguez v. Colvin, 2014 WL 5473583, at *3 (D. Colo. Oct. 29, 2014) (because the ALJ found certain impairments were severe and then proceeded to steps three and four of the analysis, any error regarding the severity of another impairment was harmless).

Furthermore, defendant asserts that although plaintiff clings to the proposition that the ALJ should have found that obesity was a severe impairment, plaintiff has not identified how such a finding would have changed the outcome of the case. According to defendant, in the end, plaintiff's appeal hinges not on the accuracy of the step two findings, but on whether the ALJ adequately considered any limitations resulting from plaintiff's alleged conditions when assessing his work-related abilities. As noted by defendant, the existence of any condition alone is not enough for it to be disabling - there must be some related functional loss. See SSR 02-1P (Titles II and XVI: Evaluation of Obesity), 2000 WL 628049 at *6-7 (The agency "will not make assumptions about the severity or functional effects of obesity combined with other

impairments," but rather will conduct an individualized assessment based on the information in the case record.). This court agrees that plaintiff has not identified any evidence of functional loss related to obesity, and there is no evidence in the record which would have required restrictions beyond those already enumerated by the ALJ in her RFC assessment. In fact, as noted by defendant, plaintiff did not allege any functional loss related to obesity in his disability application, when submitting functional reports to the agency, or while testifying at the administrative hearing. See Jimison ex rel. Sims v. Colvin, 513 Fed. App'x 789, 798 (10th Cir. 2013) (unpublished) ("there is no record indication of any functional limitations from [the claimant's] obesity or of any impairments possibly caused or exacerbated by her obesity that are inconsistent with the RFC" assessed by the ALJ).

In sum, this court finds no merit to plaintiff's first assignment of error.

**Listings.** In a Pre-Hearing Questionnaire, plaintiff's counsel indicated that plaintiff did not claim to meet or equal any listed impairments found at 20 C.F.R. 404, subpt. P, app. I. (AR 64). Now, however, plaintiff asserts that at step three in the sequential evaluation process, the ALJ failed to apply the correct legal standard in determining that plaintiff's impairments did not meet or medically equal any medical Listing, and her assessment was not based on substantial evidence. He contends that the ALJ did not discuss the evidence or her reasons for determining that he was not disabled at step three. Instead, she "simply recited the medical listing verbatim and stated without discussion that the impairments did not meet the listing." (Docket No. 14 at 21, citing AR 22). Furthermore, plaintiff asserts that the ALJ's finding that he meets none of the criteria of the Listings in incorrect. More specifically, with respect to Listing

1.02, major dysfunction of a joint(s) due to any cause, the ALJ found that plaintiff's impairment was not characterized by gross anatomical deformity (AR 22), but plaintiff notes that on December 20, 2010, Dr. Duffey examined plaintiff and identified a genu varus deformity. (AR 283). In addition, the ALJ found that plaintiff did not have "chronic joint pain and stiffness with signs of limitation of motion of the affected joints" (AR 22), yet plaintiff asserts that his chronic knee pain is "evident at every turn in this record," for which plaintiff cites examples from the record (Docket No. 14 at 21). Next, plaintiff notes that the ALJ denied that he had "findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint" (AR 22), but on January 26, 2006, x-rays of both knees showed worsening in degree of medial joint space narrowing bilaterally, with greater narrowing on the left than on the right, consistent with moderately advanced osteoarthritis. (AR 255). In addition, Dr. Duffey reviewed plaintiff's radiological history on December 20, 2010, and concluded that plaintiff suffered from "fairly advanced joint space narrowing of the medial compartment of both knees." (AR 287). Finally, plaintiff notes that the ALJ emphasized that the evidence had failed to show that his knee problems as detailed above resulted in an inability to ambulate effectively. In this regard, plaintiff notes that under the preamble to this Listing, "[t]o ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living," for example, "the inability to walk a block at a reasonable pace on rough or uneven surfaces." Plaintiff notes that after he was put through a series of standardized tests by Mr. Ward and Ms. Propst, they opined that he could not walk a block at reasonable pace on rough or uneven surfaces. (AR 418). Plaintiff thus argues

that the above analysis directs that he be found to meet Listing 1.02, and, therefore, this case should be remanded for calculation of benefits only. He further asserts that a similar analysis should have been made for Listing 1.04, Disorders of the Spine, but the ALJ allegedly failed to provide an analysis for either impairment, which should result in a remand with instructions to evaluate the Listings properly.

This court, however, agrees with the defendant that the ALJ specifically considered the relevant listings, namely, Listing 1.02 (major dysfunction of a joint) and 1.05 (disorders of the spine), but she found that the evidence did not satisfy the criteria of either listing (AR 22). She explicitly highlighted that the evidence did not show clinical abnormalities "resulting in [the] inability to ambulate effectively" as required by the Listings. More specifically, the ALJ found:

> Regarding bilateral knee osteoarthritis, the undersigned has considered Listing 1.02 *Major dysfunction of a joint(s) (due to any cause):* This Listing is not met or medically equaled because the claimant's impairment is not characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joing space narrowing, bony destruction, or ankylosis of the affected joint(s), ***resulting in inability to ambulate effectively*** (emphasis added). As defined in 1.00B2b.
>
> As for the more recently diagnosed spinal impairments, Listing 1.04 *Disorders of the spine* is not met or medically equaled because the medical evidence fails to establish that the claimant has a herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture, resulting in compromise of a nerve root (including the cauda equina) or the spinal cord ***resulting in inability to ambulate or use the arms effectively*** (emphasis added).

(AR 22) (emphasis in original). This court finds that the ALJ's findings permit meaningful review, and there is substantial evidence to support the ALJ's determination.

14

In particular, with regard to the ALJ's finding that regarding the ability to ambulate effectively, the Listings explain that

> [t]o ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(b)(1). The court notes that the plaintiff cites to the questionnaire completed by Mr. Ward and Ms. Propst in which a box was checked indicating that plaintiff could not "walk a block at a reasonable pace on rough [sic] uneven surfaces" (AR 418). As noted by defendant, however, the ALJ gave little weight to that RFC assessment (see AR 22-25), but in any event, that questionnaire also indicated that plaintiff could perform activities like shopping or banking; could travel without assistance; did not require a wheelchair, walker, two canes, or two crutches to ambulate; could use public transportation; could climb a few steps at a reasonable pace with the use of a single handrail; could prepare meals and feed himself; could care for his personal hygiene; and could sort, handle, and use papers/files. (AR 418). Therefore, the ALJ's finding that the evidence did not demonstrate an inability to ambulate effectively within the meaning of the Listings is supported by substantial evidence. In sum, the court finds no error with regard to the ALJ's findings at step three.

15

**RFC.**  Next, plaintiff argues that the ALJ failed to apply the correct legal standard in determining that the functional capacity evaluation from Mr. Ward and Ms. Propst of Optima Rehabilitation should be afforded no weight and that the ALJ's determination regarding this evaluation was not based upon substantial evidence.  Plaintiff contends the ALJ gave no weight to this assessment because she believed the opinion restricted plaintiff from lifting any weight from the floor and because it precluded him from any sitting, standing, or walking at all.  (AR 24).  Plaintiff notes, however, that the assessment clarifies those limitations in the narrative portion of the form by indicating that plaintiff would not be able to sit, stand, or walk for very long, and would need breaks in between.  Plaintiff contends that the ALJ did not address this clarification in her decision and instead found the evidence inadequate.  According to plaintiff, inadequacy of evidence triggers the ALJ's duty to recontact the treating physician, and plaintiff asserts the ALJ had an obligation to do so in this case, "especially where there was no other medical opinion in the file whatsover."  (Docket No. 14 at 24).

Furthermore, plaintiff asserts that if the ALJ believed the evidence was insufficient to determine the severity of plaintiff's physical limitations, she had the authority and arguably the responsibility to order a consultative evaluation.  Plaintiff contends that his bilateral knee impairments and back impairments are well documented and satisfy the de minimus standard of proving they more than minimally interfere with his ability to perform work-related activities.  He argues that the ALJ was not satisfied with the opinions in the file, but instead of ordering a consultative exam, she formulated her RFC without substantial evidence.  Plaintiff contends this constitutes reversible error and that the ALJ's decisions should thus be reversed or remanded on

these grounds.

This court does not agree with plaintiff's assertions. As noted above, the ALJ found that the plaintiff has the RFC to perform sedentary work as defined in the Regulations, "with lifting and/or carrying up to 50 pounds occasionally and 25 pounds frequently; standing and/or walking up to four hours during an eight-hour workday; and no more than occasional kneeling, crouching, or crawling." (AR 22). The ALJ then determined that the plaintiff is capable of performing past relevant work as a Telemarketer or as a Paraprofessional which do not require the performance of work-related activities precluded by his RFC. (AR 25). In making this determination, the ALJ specifically and adequately addressed the assessment by Optima Rehabilitation as follows:

> As for the opinion evidence, in May 2012, Dottie Propet [sic] Director of Physical Therapy Services for Optima Rehabilitation, expressed the opinion that the claimant is unable to lift any amount of weight from the floor; and is unable to sit, stand, or walk for any time at all. These limitations are not supported by the objective medical findings; e.g., normal lower extremity neurological exam by Dr. Castrejon less than one month earlier. Additionally, Ms. Propet [sic] assessed limitations on the claimant's use of his hands, in the total absence of any supporting objective medical signs or findings. Moreover, Ms. Propet's [sic] opinion is inconsistent with other substantial evidence of record; i.e., the claimant's recent performance of work activity, and his ability to sit through the hearing. Therefore, the undersigned gives no weight to Ms. Propet's opinion (Exhibits 15F and 16F).

(AR 24). This court finds that the ALJ's decision to give no weight to this questionnaire is supported by substantial evidence. Furthermore, the court does not agree with plaintiff's contention that the ALJ should have recontacted Mr. Ward and/or Mr. Propst or should have obtained a consultative exam. As noted by defendant, the ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when

17

the record is inadequate for proper evaluation of evidence, which was not the case here.  See Cowan v. Astrue, 552 F.3d 1182, 1187 (10th Cir. 2008) (no need to further develop the record because sufficient information existed for the ALJ to make her disability determination).

**Ability to Perform Other Work.**  Plaintiff next asserts that the ALJ's determination that plaintiff could perform other work in the economy was based on a wrong legal standard and not supported by substantial evidence.  More specifically, plaintiff asserts that in finding that he was capable of performing other work in the economy, the ALJ stated that she relied on the testimony of the vocational expert ("VE"), but the VE was not apprised of all of plaintiff's work-related functional limitations.  Plaintiff contends that the ALJ's conclusion that plaintiff could perform the jobs of telemarketer and paraprofessional was based on testimony from a VE, who was relying on a hypothetical that did not include, "with precision," all of plaintiff's impairments, and therefore the testimony could not be relied upon to determine he was not disabled.  Therefore, plaintiff asserts, the case should be remanded.

There is no merit to this argument, however, because as found above, the ALJ's RFC determination is supported by substantial evidence, and the ALJ used that determination to form her hypothetical question to the VE.

**Period of Disability.**  Finally, plaintiff contends that the ALJ failed to consider the entire period of alleged disability because she indicated she evaluated his claim only from March 4, 2011, forward (AR 26), even though he had amended his onset date to December 14, 2007, in a response to the ALJ's request for a pre-hearing memo.  (AR

18

247).  Plaintiff thus asserts that this case should be remanded so the entire alleged disability period can be evaluated.

Defendant responds that plaintiff's arguments about his allegedly amended onset date should be rejected for two reasons.  First, defendant correctly notes that plaintiff previously filed an application for benefits alleging disability beginning in October 30, 2007 (AR 170-74 - application filed in October 2009).  Plaintiff's application was denied in late January 2010 (AR 185), and plaintiff did not appeal that denial.  Therefore, according to defendant, the determination that plaintiff was not disabled from October 2007 through January 2010 became final.  See 20 C.F.R. § 404.905 (initial determination is binding unless timely reconsideration is requested).  "Res judicata applies in the social security context when there has been a 'previous determination or decision . . . about [the claimant's] rights on the same facts and on the same issue or issues, and this previous determination has become final by either administrative or judicial action."  Poppa v. Astrue, 569 F.3d 1167, 1170 (10th Cir. 2009) (quoting 20 C.F.R. § 416.1457(c)(1)).  Second, and as defendant asserts, more importantly, plaintiff was admittedly working as a telemarketer for four months from November 2010 through March 2011 (AR 37), earning more than $1,000 monthly (see AR 151, 167, 174, 179, 183).  Since that work was substantial gainful activity, he was thereby precluded from collecting disability benefits during the remaining time period not previously adjudicated on his prior disability claim - January 2010 through March 2011.  According to defendant, when a claimant demonstrates the ability to engage in substantial gainful activity before approval of an award and prior to the lapse of the 12-month period after onset, the claim must be denied.  See SSR 82-52, 1982 WL 31376, at *2.  Defendant

19

thus asserts that as res judicata precludes a finding of disability prior to January 2010, and plaintiff admittedly demonstrated the ability to engage in substantial gainful activity from November 2010 through March 2011, the ALJ reasonably considered plaintiff's condition and functional abilities from March 2011 forward, through the date of her June 2012 decision. This court agrees.

## **CONCLUSION**

This Court finds that the ALJ's decision was supported by substantial evidence and the ALJ committed no legal error in reaching her adverse finding.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the ALJ's denial of disability benefits is **AFFIRMED**. It is

**FURTHER ORDERED** that each party shall pay its own costs and attorney fees.

Date:  March 16, 2015                                  s/ Michael J. Watanabe
       Denver, Colorado                                United States Magistrate Judge